## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

                                                               Cr. No. 17-3564 JAP

v.

ERMOND OVERTON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

A federal grand jury indicted Defendant Ermond Overton on one count of bank robbery in violation of 18 U.S.C. § 2113(a).[1] Defendant maintains that he robbed the bank for protection because he believed that people (later identified by Defendant as members of the Sinaloan Cartel) were following him. He thought that if he was in law enforcement custody, he could escape certain death at their hands. We now know that Defendant's belief was a persecutory delusion.[2] The question before the Court is whether the jury should learn that as well.[3] For the reasons below, the Court will exclude evidence of Defendant's psychological condition at trial. The Court therefore will grant the United States' Motion in Limine to Exclude Evidence of the Defendant's Psychological Condition from Trial.

---

[1] *See* REDACTED INDICTMENT (Doc. 12).
[2] *See* PSYCHOLOGICAL EVALUATION (Doc. 76-1 at 12).
[3] *See* MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE DEFENDANT'S PSYCHOLOGICAL CONDITION FROM TRIAL ("Motion") (Doc. 72). The Motion is fully briefed. *See* RESPONSE IN OPPOSITION TO MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE DEFENDANT'S PSYCHOLOGICAL CONDITION FROM TRIAL ("Response") (Doc. 76); GOVERNMENT'S REPLY TO THE DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE DEFENDANT'S PSYCHOLOGICAL CONDITION FROM TRIAL ("Reply") (Doc. 78).

BACKGROUND

On December 7, 2017, Defendant arrived at a federal courthouse in Albuquerque, New Mexico.[4] At that time, Defendant believed that he was being followed by unknown assailants. Doc. 2 at 2. Unable to secure help elsewhere,[5] Defendant went to the federal courthouse in the hopes that court security officers could assist him. Doc. 62 at 1. When the court security officers were unable to provide him the assistance he requested, Defendant asked for a pen and a piece of paper. *Id.* On the paper, Defendant wrote: "Give me the money. I have a gun." *Id.* Defendant showed the note to the court security officers, told them they would be hearing from him soon, and then proceeded to walk to a nearby Wells Fargo Bank. *Id.* at 1–2. There, Defendant presented a bank teller with that same note. *Id.* at 2. The teller opened the cash drawer and handed the cash to Defendant. Defendant then walked out of the bank. *Id.* Shortly thereafter, police arrested Defendant, and, after being mirandized, Defendant confessed to the bank robbery. *Id.* It was not until Defendant arrived at the jail that he finally learned who was purportedly following him. Doc. 76-1 at 7. According to Defendant, a man spoke to him through a vent in his cell and informed him that the Sinaloan Cartel had a hit out on him. *Id.*

PROCEDURAL HISTORY

On August 27, 2019, Defendant submitted a Notice of Expert Witness Disclosure under Federal Rules of Criminal Procedure 12.2(b)(1) and 16(b)(1)(C).[6] In the Notice, Defendant stated his intention to present expert witness testimony regarding his mental health at the time of the

---

[4] *See* CRIMINAL COMPLAINT (Doc. 2 at 2).
[5] Defendant had previously sought protection from multiple sources, including from the Albuquerque Police Department and the Bernalillo County Sheriff's Office, and at the state courthouse and the University of New Mexico Hospital. *See* Resp. at 7; RESPONSE IN OPPOSITION TO UNITED STATES' OPPOSED MOTION FOR PRETRIAL MENTAL HEALTH EXAMINATION FOR DETERMINATION OF THE EXISTENCE OF INSANITY AT THE TIME OF THE OFFENSE AND TO DETERMINE WHETHER THE DEFENDANT IS COMPETENT TO STAND TRIAL (Doc. 62 at 1).
[6] *See* NOTICE OF EXPERT WITNESS DISCLOSURE ("Notice") (Doc. 55).

alleged robbery. Not. at 2. Dr. Christine Johnson, Ph.D., a board-certified forensic psychologist, evaluated Defendant. Dr. Johnson's opinion is that on the day of the purported robbery Defendant's "thought content was marked by what appeared to be persecutory delusions involving persons involved with the cartel." Doc. 76-1 at 8–9. Dr. Johnson's report explains that "[t]he nature of persecutory delusional thinking is such that the belief in danger, although irrational, is firmly held, and not amenable to reasoning." *Id.* at 12.

The United States moved to conduct its own mental health evaluation of Defendant.[7] The Court denied that motion, noting that no statutory authority or case law gives the Court license to order Defendant to submit to a mental health examination by the United States when Defendant is not relying on an insanity defense.[8] Even so, the Court noted that its ruling "does not necessarily permit a jury to hear evidence of Defendant's mental health." Mem. Op. and Order at 5.

Subsequently, the United States filed the Motion in Limine. The United States seeks to preclude evidence of Defendant's psychological condition from being introduced at trial on three grounds: (1) the evidence is not relevant; (2) it does not support a duress defense; and (3) because the danger of unfair prejudice outweighs the probative value of the evidence. Mot. at 3–15. The Motion is opposed. *See* Resp. at 1–10. In his Response, Defendant informed the Court that he intends to seek a duress jury instruction. *Id.* at 5.

DISCUSSION

1. **Indictment under 18 U.S.C. § 2113(a)**

Defendant is charged under 18 U.S.C. § 2113(a), which proscribes two different types of criminal activity:

---

[7] *See* UNITED STATES' OPPOSED MOTION FOR PRETRIAL MENTAL HEALTH EXAMINATION FOR DETERMINATION OF THE EXISTENCE OF INSANITY AT THE TIME OF THE OFFENSE AND TO DETERMINE WHETHER THE DEFENDANT IS COMPETENT TO STAND TRIAL (Doc. 58).
[8] *See* MEMORANDUM OPINION AND ORDER (Doc. 66) at 3–4.

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to . . . any bank . . .; or
>
> Whoever enters or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . and in violation of any statute of the United States, or any larceny—
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

The parties dispute which paragraph of § 2113(a) Defendant is charged under. The United States maintains that Defendant is charged under the first paragraph of § 2113(a), Mot. at 7 n.4, while Defendant argues he is charged under the second paragraph, Resp. at 3. The record clearly indicates Defendant is charged with violating the first paragraph. In particular, the single-count indictment provides in pertinent part:

> On or about December 7, 2017, in Bernalillo County, in the District of New Mexico, the defendant, **ERMOND OVERTON**, by force, violence, and intimidation, did knowingly take from the person and presence of another a sum of United States currency belonging to and in the care, custody, control, management and possession of Wells Fargo Bank, located at 200 Lomas Blvd. NW, Albuquerque, New Mexico, the deposits of which were then insured by the Federal Deposit Insurance Corporation.
>
> In violation of 18 U.S.C. § 2113(a).

Doc. 12. Although the indictment does not expressly cite the first paragraph of § 2113(a), a comparison of the indictment to the statutory language clearly indicates that the indictment is based on the first paragraph.

   2. *Mens rea*

The importance of isolating the paragraph of § 2113(a) under which Defendant is charged is due in part to the parties' dispute over the *mens rea* required to establish guilt under the bank robbery statute. The Court concludes, based on Supreme Court and Tenth Circuit authority, that the first paragraph of § 2113(a) requires a general intent.

Although the first paragraph of § 2113(a) does not contain a specific *mens rea* requirement, the Supreme Court has interpreted that provision as requiring a general intent. *See Carter v. United States*, 530 U.S. 255, 268 (2000). In *Carter*, the Court was tasked with determining whether § 2113(b)[9] was a lesser included offense of § 2113(a). *Id.* at 258–59. In reaching the conclusion that § 2113(b) was not a lesser included offense, the Court necessarily had to determine the elements of § 2113(a). The Court explained that as applied to § 2113, "the presumption in favor of scienter demands only that we read subsection (a) as requiring proof of *general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." *Id.* at 268 (emphasis in original); *see also United States v. Taylor*, 454 F.3d 1075, 1081 (10th Cir. 2006) ("Although [§ 2113(a)] does not specify a *mens rea*, the Supreme Court has stated that it 'requir[es] proof of general intent . . . .'" (quoting *Carter*, 530 U.S. at 268)).

The Supreme Court's analysis relied heavily on *United States v. Lewis*, 628 F.2d 1276 (10th Cir. 1980), which endorsed a general intent under the same subsection of the statute. *See Carter*, 530 U.S. at 268. In *Lewis*, the defendant entered a bank and took money from a teller by presenting a note which read: "This is a bank robbery. Put the money in the bank bag and keep your foot off the button." *Lewis*, 628 F.2d at 1278. After receiving money from the teller, the defendant deliberately failed to make a quick escape. *Id.* He instead hoped to be arrested and returned to prison

---

[9] Section 2113(b) provides that

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both; or
>
> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than one year, or both.

5

where he could receive treatment for his alcoholism and could pursue his writing hobby. *Id.* at 1277. The Tenth Circuit was thus presented with the question of whether the defendant's intent to return to prison satisfied the *mens rea* requirement under the statute.

The Tenth Circuit ultimately concluded that the first paragraph of § 2113(a) required only a general intent. In reaching that conclusion, the court reasoned that felonious intent was not incorporated into the first paragraph of § 2113(a) and that "the offense is so 'unambiguously dangerous to others that the requisite mental intent is necessarily implicit in that description.'" *Lewis*, 628 F.2d at 1279 (quoting *United States v. DeLeo*, 422 F.2d 487, 491 (1st Cir. 1970)).[10] As described by the Supreme Court, "[t]hough [the] defendant [in *Lewis*] knowingly engaged in the acts of using force and taking money (satisfying 'general intent'), he did not intend permanently to deprive the bank of its possession of the money (failing to satisfy 'specific intent')." *Carter*, 530 U.S. at 268. That the defendant knowingly engaged in the *actus reus* was thus sufficient to support the defendant's conviction under § 2113(a). *Id.*; *accord United States v. Deiter*, 890 F.3d 1203, 1213 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 647, 202 L. Ed. 2d 506 (2018).

---

[10] The Tenth Circuit's reliance on *DeLeo*, provides additional context for its decision in *Lewis*. There, the First Circuit described the "careful draftsmanship" of the bank robbery statute:

> Six specific crimes are set out in section 2113. Felonious intent is specifically incorporated in the definition of two of them: entering a federally insured institution with intent to commit a felony (a—second paragraph), and taking property with intent to steal or purloin (b). However, it is not made part of the crimes of taking by force and violence or by intimidation (a—first paragraph); knowingly receiving stolen property (c); assaulting or putting in jeopardy the life of a person by a dangerous weapon (d); or killing a person, or forcing a person to accompany him, while in the course of committing one of the other offenses or avoiding apprehension or confinement for any of them (e).
> . . . .
> Entering and taking can be innocent acts, and therefore require felonious intent to constitute crimes;[ ] receiving stolen property can be innocent, unless done knowingly. However, the other offenses describe acts which, when performed, are so unambiguously dangerous to others that the requisite mental element is necessarily implicit in the description.

*DeLeo*, 422 F.2d at 490–91.

### 3. Relevance

Next, the United States argues that because Defendant is charged with a general intent crime, evidence of his psychological condition is irrelevant and should be excluded under Federal Rule of Evidence 401. Defendant erroneously maintains that evidence of his psychological condition is relevant because § 2113(a) requires a specific intent. *See supra* Part 2. Alternatively, Defendant argues that evidence of his psychological condition is relevant to his duress defense.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Ordinarily, a defendant may not rely on "psychological or psychiatric evidence to negate an element of the government's case" when charged with a general intent crime. *See United States v. Brown*, 326 F.3d 1143, 1147 n.2 (10th Cir. 2003); *see also United States v. Cameron*, 907 F.2d 1051, 1063 n.20 (11th Cir. 1990) ("Psychological evidence is relevant to *mens rea* only when the defendant is charged with a specific intent crime."). But that limiting principle only applies when a defendant does not assert an affirmative defense. *United States v. Allen*, 449 F.3d 1121, 1126–27 (10th Cir. 2006) ("[L]anguage in [*Brown*] limiting the use of evidence of mental illness to specific intent crimes . . . has application only where the defendant is *not* raising the affirmative defense but instead is challenging the government's proof of the element of specific intent." (emphasis in original)). Here, Defendant is challenging the United States' ability to prove an element of the offense (i.e., his intent) and is asserting an affirmative defense (i.e., duress).

Defendant's argument that evidence of his psychological condition is relevant to his intent clearly fails under *Brown*, because Defendant is charged with a general intent crime. 326 F.3d at 1147 n.2 ("The use of psychological or psychiatric evidence to negate an element of the

government's case is limited to offenses requiring proof of a specific intent.").[11] Nevertheless, Defendant asserts that he is seeking a duress jury instruction. Resp. at 5. In this circuit, duress is an affirmative defense. *See United States v. Dixon*, 901 F.3d 1170, 1176 (10th Cir. 2018). And "[t]he fundamental concept of an affirmative defense is that it does not negate an element of the adversary's case [to be relevant]." *Allen*, 449 F.3d at 1125. The question thus becomes whether evidence of Defendant's psychological condition is relevant to the affirmative defense of duress.

   a. Duress

Tenth Circuit Pattern Instruction 1.36 ("coercion or duress") consists of three elements:

1. [T]he defendant was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself [or a family member, or others];
2. [T]he defendant had no reasonable, legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the harm; and
3. [A] direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm.

Tenth Cir. Crim. Pattern Jury Inst. No. 1.36. The defendant bears the burden of proving all three elements of a duress defense by a preponderance of the evidence. *See United States v. Beckstrom*, 647 F.3d 1012, 1016 (10th Cir. 2011).

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). But "the right to present an affirmative defense is not

---

[11] Even without the rule in *Brown*, the Court would conclude that Defendant's psychological condition does not make a fact of consequence more or less probable—namely, Defendant's *knowledge* that he was taking of property of another by force and violence or intimidation. *See Carter*, 530 U.S. at 268. Indeed, Defendant does not dispute that he *knew* what he was doing. Instead, he seeks to offer Dr. Johnson's testimony of his psychological condition to show that he "did not intend to permanently deprive a financial institution of money" and that he "intended to seek protection from his paranoid delusions." Resp. at 2. But Defendant has wholly failed—in fact, he has not even attempted—to provide a nexus between the evidence of his psychological condition and his *knowledge* of his actions. The proffered evidence thus fails to meet the threshold requirement of relevancy.

absolute." *Dixon*, 901 F.3d at 1177. "A district court must refuse to issue a duress-defense instruction when the defendant fails to make a threshold showing of duress sufficient to place the defense in issue." *Id.* (internal quotation marks omitted). "If the evidence is lacking as to any element of the [duress] defense the trial court may properly disallow the defense as a matter of law and refuse to instruct the jury as to [duress]." *United States v. Scott*, 901 F.2d 871, 873 (10th Cir. 1990). Such is the case here. The Court concludes that Defendant's reliance on a duress defense fails as a matter of law because Defendant cannot establish the first or second elements of the duress defense.[12]

A recent Tenth Circuit opinion, *United States v. Dixon*, 901 F.3d 1170 (10th Cir. 2018), is central to the Court's duress analysis. There, the defendant was convicted of embezzlement and theft from an Indian tribal organization in violation of 18 U.S.C. § 1163. *Id.* at 1173. The defendant sought to present a duress defense "on the theory that she faced an imminent threat of sexual assault from her stepfather and that her Post Traumatic Stress Disorder ('PTSD') caused her to believe that no recourse to escape that assault was available except through theft." *Id.* Before trial, the government moved the district court to reject the defendant's duress defense and exclude all related evidence and testimony. *Id.* The district court granted the motion, and the Tenth Circuit affirmed. *Id.*

On appeal the defendant argued that "the sexual abuse and resultant PTSD may [have] affect[ed] the objective reasonableness of [her] fear and altered [her] psychology" in such a way that she believed that her only way to escape certain harm at the hands of her stepfather was to engage in unlawful conduct. *Id.* at 1180 (internal quotation marks and record citations omitted) (brackets in original). The court rejected that argument wholesale, concluding that the "plain text of [the Tenth Circuit Pattern Instruction 1.36] makes clear that the legal propriety of a defendant's

---

[12] On January 21, 2020, the Court held a hearing on the United States' Motion in Limine. At the hearing, Defendant requested that the Court reserve ruling on the issue of duress. The Court, however, must examine affirmative defenses when determining the relevancy of the proffered evidence. *See Allen*, 449 F.3d at 1125 (explaining that evidence need not be relevant to an element of the charged offense, if it is relevant to an affirmative defense).

9

assessment of, and response to, the circumstances that allegedly have subjected her to duress is determined by applying an objective lens—that is, a defendant's subjective beliefs or perspectives are only relevant insofar as they are objectively reasonable." *Id.* at 1180–81. The court went on to clarify that "[t]his is not to say that the linguistic formulation of Pattern Instruction 1.36 is purely objective." *Id.* at 1182. But,

> the linguistic formulation of Pattern Instruction 1.36 contemplates consideration of whether the objective reasonableness of a particular defendant's conduct has been materially influenced by external, concrete factors unique to her does not mean that this language similarly contemplates that the factfinder should take into account whether the objective reasonableness of the defendant's conduct has been influenced by non-tangible psychological conditions that ostensibly alter the defendant's subjective beliefs or perceptions.

*Id.* at 1183.[13]

Defendant's theory of duress is impermissible under *Dixon*. Defendant asserts that "Dr. Johnson's testimony about how [Defendant's] delusions would be indistinguishable from reality would bear directly on the element of a duress defense that he *felt* like he was under threat of death and that there was no other alternative." Resp. at 6 (emphasis added). But like *Dixon*, the proper focus of the inquiry is not "the *subjectively distorting* impact of [Defendant's delusions] on [his] ability to reasonably perceive the threat of harm and legal alternatives to avoid it." *Dixon*, 901 F.3d at 1182 (emphasis in original). "[T]he touchstone is still what is objectively reasonable." *Id.* Here, Defendant makes no assertion that he was under any real threat of harm, only that he subjectively

---

[13] The court gave an example of "certain specific circumstances confronting [a] particular defendant [that] may influence the factfinder's evaluation of whether her conduct is reasonable." *Dixon*, 901 F.3d at 1183.

> [A]s salient here, if the particular defendant is a quadriplegic, ordinarily it would not be a "reasonable, legal alternative" for that defendant to physically run away from an "unlawful and present, imminent and impending threat . . . of death or serious bodily injury" that was presented by an able-bodied assailant, Pattern Inst. 1.36—but it might be reasonable for a defendant not afflicted by quadriplegia to do so.

*Id.* The distinction drawn by the Tenth Circuit appears to be based on the physical attributes of a particular defendant, as opposed to that defendant's psychological particularities.

believed there to be a threat of harm as a result of his persecutory delusions. Resp. at 7. But Defendant's belief that he was in danger of being killed by the Sinaloan Cartel is not objectively reasonable. And his subjective beliefs do not create a "well-grounded apprehension of death or serious bodily injury." Tenth Cir. Crim. Pattern Jury Inst. No. 1.36.[14] Indeed, the Tenth Circuit instructs the Court that it need not consider the "non-tangible psychological conditions that ostensibly alter the defendant's subjective beliefs or perceptions." *Dixon*, 901 F.3d at 1183. Thus, Defendant's theory of duress fails as a matter of law.

While this result may seem harsh, the duress defense "call[s] for the imposition of clearly defined and concrete boundaries to distinguish between those defendants who are worthy of exculpation and all others." *Dixon*, 901 F.3d at 1183. But duress, unlike other legal excuses for unlawful conduct, can theoretically apply to anyone.

> [T]he . . . objective restriction on the cause of the disability in duress is necessary to ensure conformity with a characteristic that is inherent in the other excuses. By requiring that an actor be intoxicated or insane, those excuses automatically ensure that an excuse will be available only for defendants with a demonstrable defect that distinguishes them from the general population. In contrast, the bare, unqualified disability in duress, a state of coercion, carries no such assurance; everyone is subject to pressures, demands, and urges every day.

2 Paul H. Robinson, CRIMINAL LAW DEFENSES § 177(c).

Furthermore, Defendant has not shown that he had no reasonable, legal alternative to violating the law. To be sure, Defendant did seek help from multiple sources, including local law enforcement officers. *See supra* n.5. Even so, "[a] defendant who has the opportunity to avoid committing a crime, either by contacting police *or by otherwise removing [himself] from a threatening situation*, cannot seek to excuse [his] criminal conduct by claiming to have acted under

---

[14] Notably, *Dixon* describes courts that *may* be amenable to Defendant's argument because they consider the defendant's "situation" or "particular circumstances." *See Dixon*, 901 F.3d at 1181; *see also* MODEL PENAL CODE AND COMMENTARIES § 2.09(1), at 367 (Am. Law Inst. 1985); *United States v. Nwoye*, 824 F.3d 1129, 1137 (D.C. Cir. 2016). The Tenth Circuit, however, did "not read our Pattern Instruction 1.36 as offering the same or similar invitation to consider evidence relating to conditions like PTSD." *Dixon*, 901 F.3d at 1182.

duress." *United States v. Nwoye*, 663 F.3d 460, 462–63 (D.C. Cir. 2011) (emphasis added). Defendant is not entitled to a duress jury instruction simply because he contacted law enforcement officers, when he had *other* lawful alternatives not pursued. Similarly, seeking help from the state and federal courthouses and at the University of New Mexico Hospital were not Defendant's only other alternatives. Defendant for example, could have barricaded himself in his home or left town. Under *Dixon*, Defendant is not entitled to a duress jury instruction because he subjectively believed he had no other recourse to escape the threatened harm. *Dixon*, 901 F.3d at 1184.

Defendant's duress defense fails as a matter of law. Accordingly, he may not introduce evidence of his psychological condition at trial because such evidence is not legally relevant.

### 4. Federal Rule of Evidence 403

Alternatively, assuming Defendant is entitled to a duress instruction, the Court will exclude the evidence under Federal Rule of Evidence 403. Under Rule 403, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In engaging in the requisite balancing," courts "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008). "[I]t is not enough that the risk of unfair prejudice be greater than the probative value of the evidence; the danger of that prejudice must *substantially* outweigh the evidence's probative value." *Id.* (emphasis in original).

Evidence is unfairly prejudicial if "it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999) (emphasis added) (quoting *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996)).

Defendant's proffered evidence is likely to do just that. Dr. Johnson's report found, among other things, that on the day of the alleged robbery Defendant was suffering from "persecutory delusions" that were "not amendable to reason." Resp. at 1–2. The Court believes that evidence has a high likelihood of provoking sympathy from a jury—an improper basis for its judgment. Moreover, Dr. Johnson's findings teeter closely on providing Defendant with an improper justification or excuse for his conduct. Evidence of Defendant's psychological condition could "easily mislead the jury into thinking that such . . . medical condition[s] amount[ ] to temporary insanity or ameliorates the offense." *United States v. Schneider*, 111 F.3d 197, 203 (1st Cir. 1997). The jury will not be given an insanity instruction at trial[15] and, as a result, may be left to speculate as to the impact of Defendant's persecutory delusions on the issue of guilt. Speculation is undoubtedly an impermissible ground on which a jury may base a verdict. *See Bankers Tr. Co. v. Lee Keeling & Assocs., Inc.*, 20 F.3d 1092, 1101 (10th Cir. 1994) ("[T]he jury's finding that [the defendant] was negligent . . . could only have been based on speculation and conjecture, an impermissible ground upon which to base its verdict.").

Furthermore, the probative value of this evidence does not substantially outweigh the prejudicial impact such evidence would have. Of course, "[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) (emphasis in original) (internal quotation marks omitted). As detailed above, the Court is skeptical of the probative value of this evidence. Indeed, the evidence that Defendant seeks to admit does not address his knowledge of his actions at the time of the offense. Instead, Defendant offers evidence that he genuinely believed the cartel was following him because of his persecutory

---

[15] Defendant has repeatedly maintained that he is not seeking an insanity defense. *See* Resp. at 1 n.1, 9; *see also* Doc. 62 at 4.

delusions. Despite those delusions, Defendant *never* claims that he did not know what he was doing when he took money from the bank. Given the limited probative value of this evidence, its highly prejudicial nature, and the danger of misleading the jury, the Court will exclude the evidence under Federal Rule of Evidence 403.

**5. Defendant's right to present a defense**

Defendant directs the Court to cases that emphasize a defendant's right to present a defense. Resp. at 7. The Court does not believe that its ruling on the pending Motion infringes upon the Defendant's right to do just that. Certainly, "[t]he Fifth and Sixth Amendments grant a defendant the 'right to testify, present witnesses in his own defense, and [ ] cross-examine witnesses against him—often collectively referred to as the right to present a defense.'" *United States v. Tapaha*, 891 F.3d 900, 905 (10th Cir. 2018) (quoting *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004)). "But this right is not absolute; a defendant must still abide the rules of evidence and procedure." *Tapaha*, 891 F.3d at 905 (internal quotation marks omitted); *see Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence.").

IT IS THEREFORE ORDERED that the United States' Motion in Limine to Exclude Evidence of the Defendant's Psychological Condition from Trial (Doc. 72) is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE